UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:18CR175-RJC |
| ) | |
| v. ) | BILL OF INDICTMENT |
| ) | |
| (1) AARON GUIDO ) | Violation: |
| (2) STARR ILZHOEFER ) | |
|    a/k/a Starr Campbell ) | 18 U.S.C. § 371 |
| ) | 18 U.S.C. § 1014 |
| _____) | |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

### SHORT SALE MORTGAGE FRAUD CONSPIRACY

1. From in or about 2009 through in or about 2014, Defendant AARON GUIDO and Defendant STARR ILZHOEFER, also known as Starr Campbell, were residents of Charlotte, North Carolina and the owners and members of IORT, LLC, a company in the business of buying and selling real estate. The purported goal of IORT was to make profits through purchasing, renovating, renting, and selling real estate.

2. Beginning in or about October 2009 and continuing through in or about March 2014, in the Western District of North Carolina and elsewhere, GUIDO and ILZHOEFER, together with coconspirators known and unknown to the Grand Jury, conspired to commit short sale mortgage fraud specifically by defrauding home mortgage lenders, mortgage loan servicers, and the Federal Housing Administration ("FHA"), a home loan insurance program operated by the United States Department of Housing and Urban Development.

3. Generally, GUIDO, ILZHOEFER, and others, fraudulently induced mortgage lenders, mortgage loan servicers, and FHA to approve sales of distressed properties for amounts less than what the owners owed the lenders ("short sales"). GUIDO, ILZHOEFER, and others, fraudulently induced the lenders to approve short sales for properties, including properties originally owned by GUIDO and ILZHOEFER, by providing false and materially misleading information to the mortgage lenders, mortgage loan servicers, and FHA. As a result of the short sale mortgage fraud scheme and in furtherance of the conspiracy, defendants caused a loss to financial institutions in excess of $1 million.

1

4.  GUIDO, ILZHOEFER, and others, generally targeted distressed homeowners and purchased their properties in the name of IORT, and in the names of nominee entities, by short sales (the "A-B" transaction). GUIDO, ILZHOEFER, and others, then quickly resold the properties, frequently on the same day, for a higher price (the "B-C" transaction). GUIDO, ILZHOEFER, and others conducted at least 50 short sales with subsequent flips wherein the difference between the "A-B" transaction short sale price and the "B-C" transaction "flip" sale price totaled approximately $1 million. Generally, the manner and means by which GUIDO, ILZHOEFER and their co-conspirators operated the mortgage fraud conspiracy, included:

   A.  GUIDO, ILZHOEFER, and their co-conspirators targeted distressed homeowners with false promises of foreclosure rescue and financial recovery.

   B.  GUIDO, ILZHOEFER, and their co-conspirators made and caused to be made to the mortgage lenders associated with these distressed properties false representations to induce approval of short sale transactions on the properties. Specifically, the short sale applications submitted to the lenders contained false statements and material omissions, were supported by false documents, and actively concealed material facts, including:

   i.  GUIDO, ILZHOEFER, and others made and caused to be made false statements regarding the homeowners' financial and personal circumstances;

   ii.  GUIDO, ILZHOEFER, and others made and caused to be made false representations about the value of the mortgaged properties;

   iii.  GUIDO, ILZHOEFER, and others submitted and caused to be submitted fraudulent repair estimates that adversely impacted accurate appraisal values;

   iv.  GUIDO, ILZHOEFER, and others concealed the fact that they had already identified another buyer for the property who was willing to purchase the property at a higher price and without additional work being performed;

   v.  GUIDO, ILZHOEFER, and others made and caused to be made false and fraudulent representations about the buyers of the properties, including: (1) representations that the purported transactions were "arm's length" transactions as required by the lenders; (2) representations that there were no other agreements between the buyers

and sellers other than those specifically disclosed; and (3) representations that the properties would not be flipped;

      vi.    GUIDO, ILZHOEFER, and others made and caused to be made false representations about the financial condition of the buyers in the short sale, including that the buyers had obtained financing for the short sale purchase of the home by a lender, BLTREJV3 Charlotte LLC ("BLT"), when, in truth and fact, the funding from BLT was actually for the ultimate purchase of the home in the "B-C" transaction and BLT had not in fact loaned any funds to the "B" buyer; and

      vii.    GUIDO, ILZHOEFER and others made and caused to be made false representations about the financial condition of the buyers in the short sales, including that the buyers had bank accounts with sufficient funds to purchase the properties, when the bank account statements were actually for other entities and had been altered.

    C.    ILZHOEFER and GUIDO would create and cause to be created various Limited Liability Companies to use as shell companies to make the initial short sale purchases. ILZHOEFER, GUIDO, and others concealed and attempted to conceal from the lenders that ILZHOEFER and GUIDO ultimately controlled the Limited Liability Companies.

    D.    ILZHOEFER, GUIDO, and others concealed from the lenders that any profit to the shell company from the "B-C" transaction was ultimately controlled by ILZHOEFER, GUIDO, and IORT. Further, ILZHOEFER and GUIDO, together with their coconspirators, concealed from the lenders that the shell company did not provide and control all or part of the funds associated with the "A-B" purchase.

    E.    ILZHOEFER, GUIDO, and IORT did not keep accurate financial records nor did they file tax returns. GUIDO and ILZHOEFER concealed their financial condition from others and avoided making the ordinary financial records associated with a business by living directly out of business bank accounts, using bank accounts in the names of nominee companies, and commingling funds between various companies.

## COUNT ONE
(Short Sale Mortgage Fraud Conspiracy – 18 U.S.C. § 371)

5.    The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 4 of the Bill of Indictment, and further alleges that:

6. From in or about 2009 and continuing thereafter until in or about 2014, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants,

(1) AARON GUIDO, and
(2) STARR ILZHOEFER,

and others known and unknown to the ~~did~~ Grand Jury knowingly combine, conspire, confederate, agree with each other and persons both known and unknown to the Grand Jury, to commit offenses against the United States, including violations of Title 18, United States Code, Section 1014 (making a false statement and application in relation to a loan) and Section 1343 (wire fraud).

Manner and Means

7. The defendants and others known and unknown to the Grand Jury carried out the conspiracy in the manner and means described in paragraphs 1 through 4 of the Bill of Indictment, among others.

Overt Acts

8. In furtherance of the conspiracy and to accomplish the objects thereof, AARON GUIDO, STARR ILZHOEFER, and their coconspirators committed one or more overt acts in the Western District of North Carolina and elsewhere:

Acts related to 3420 Rogers Street, Charlotte

a. On or about October 19, 2012, ILZHOEFER, as the co-owner of the property, submitted and caused to be submitted to JP Morgan Chase, the mortgage lender on 3420 Rogers Street, false, fraudulent, and misleading information to effect a short sale of the property. The information to the lender contained false and fraudulent representations about ILZHOEFER's financial condition as well as false and fraudulent representations about the condition of the property.

b. On or about November 20, 2012, as a result of fraudulent representations made by ILZHOEFER regarding 3420 Rogers Street, JP Morgan Chase agreed to a short sale of the property.

c. On or about December 20, 2012, ILZHOEFER submitted and caused to be submitted to JP Morgan Chase a fraudulent Arm's Length Affidavit. The affidavit falsely stated the sale of 3420 Rogers Street was an "arm's length" transaction between parties who were unrelated and unaffiliated by family, marriage, or commercial enterprise and that there were no agreements, understandings, or contracts relating to the current sale or subsequent sale of the property that had not been disclosed to the Lender and/or Servicer.

d.  On or about December 20, 2012, ILZHOEFER and the co-owner of 3420 Rogers Street sold the property, via short sale, to Yellow Apple Realty, LLC for $30,000.

e.  On or about January 25, 2013, Yellow Apple Realty, LLC sold 3420 Rogers Street to NCF Properties 2, LLC for $35,000.

f.  On or about January 25, 2013, NCF Properties 2, LLC sold 3420 Rogers Street to L.B. for $58,100. A portion of the funds obtained from this property sale were not sent to NCF Properties 2 LLC as indicated on the HUD-1, but rather, at GUIDO's direction, were used to purchase another property.

Acts related to 257 Victoria Avenue, Charlotte

g.  In or about January 2013, ILZHOEFER, as the co-owner of the property, submitted and caused to be submitted to Cenlar, the mortgage loan servicer on 257 Victoria Avenue, false, fraudulent, and misleading information to effect a short sale of the property. The information to the lender contained false and fraudulent representations about ILZHOEFER's financial condition as well as false and fraudulent representations about the value of the property.

h.  In or about January 2013, ILZHOEFER and GUIDO submitted and caused to be submitted a sales contract for 257 Victoria Avenue from Rockmount Realty, LLC for $90,000 to Cenlar. The packet also contained a fraudulent Wells Fargo bank statement for a purported account of Rockmount Realty LLC for January 2013.

i.  In or about February 2013, ILZHOEFER and GUIDO submitted and caused to be submitted an Agreement to Amend Contract to Cenlar increasing the purchase price for 257 Victoria Avenue to $200,000. ILZHOEFER and GUIDO submitted, and caused to be submitted, a fraudulent bank record purporting to be from Rockmount Realty to Cenlar stating that Rockmount had $236,690.89 in Wells Fargo account *0963 in December 2012. However, Wells Fargo account *0963 actually belonged to IORT LLC and had a balance of $136,690.89 at the end of 2012. Both ILZHOEFER and GUIDO were member managers of IORT and signatories for the account.

j.  On or about September 17, 2013, ILZHOEFER and GUIDO submitted and caused to be submitted to Cenlar an Offer to Purchase and Contract, between ILZHOEFER (seller) and Blackburn Family Holdings LLC (buyer) for 257 Victoria Avenue for a purchase price of $110,000. Additionally, ILZHOEFER submitted a false, fraudulent, and misleading short sale affidavit stating that the sale of the property was an "arm's length" transaction and that there were no agreements, understandings, or contracts relating to the current sale or subsequent sale of the property that have not been disclosed.

5

k. On or about February 19, 2014, ILZHOEFER and GUIDO submitted or caused to be submitted, fraudulent documents, including a fraudulent Uniform Borrower Assistance Form, to Cenlar making false statements about ILZHOEFER's finances.

l. On or about July 28, 2014, GUIDO, through Itsame, LLC, placed a bid for the foreclosure auction sale of 257 Victoria Avenue with a bid price of $307,127.81.

m. On or about October 17, 2014, ILZHOEFER and GUIDO sent and caused to be sent to Cenlar a check for $307,127.81, which represented the funds for the supposed third party bid for the auction sale of 257 Victoria Avenue. IORT provided a portion of the funds used to purchase 257 Victoria Avenue in foreclosure, and ILZHOEFER remained in the property.

Acts related to 2020 Cindy Creek Lane, Charlotte

n. In or about December 2012, ILZHOEFER and GUIDO submitted and caused to be submitted to Bank of America, the mortgage lender on 2020 Cindy Creek Lane, false, fraudulent, and misleading information to effect a short sale of the property.

o. In or about July 2013, ILZHOEFER and GUIDO submitted and caused to be submitted to Bank of America, false and fraudulent documents to effect a short sale on 2020 Cindy Creek Lane, including a false and fraudulent bank statement and an amended contract to purchase the property.

p. On or about August 1, 2013, as a result of fraudulent representations made during the short sale process, Bank of America agreed to a short sale price of $42,915, which was less than what owed to Bank of America.

q. On or about September 12, 2013, Oracle Home Investments LLC purchased 2020 Cindy Creek by short sale, using a purported "loan" from BLT to fund the purchase.

r. On or about September 14, 2013, an Offer to Purchase and Contract was executed between Oracle Home Investments, LLC, as seller, and BLT, as buyer, for 2020 Cindy Creek for a purchase price of $58,000.

s. On or about October 16, 2013, a Settlement Statement/HUD-1 between Oracle Homes, LLC, seller, and BLT, buyer, for a purchase price of $58,000 was executed.

Acts related to 1806 Choyce Circle, Charlotte

t. On or about December 1, 2012, ILZHOEFER and GUIDO submitted and caused to be submitted to J.P. Morgan Chase, the mortgage lender on 1806

6

Choyce Circle, false, fraudulent, and misleading information to effect a short sale of the property, including a fraudulent repair estimate.

u.   On or about May 17, 2013, Fin Investments LLC, a company organized by GUIDO, as the buyer, executed a sales contract for the property located at 1806 Choyce Circle, Charlotte, North Carolina for $13,750. On or about June 26, 2013, an amended agreement was executed for $27,000.

v.   On or about August 21, 2013, an Offer to Purchase and Contract was executed between Fin Investment LLC, as seller, and J.Z.B. and D.S., as the buyers, for 1806 Choyce Circle for $40,000.

w.   On or about August 23, 2013, J.V.K. sold 1806 Choyce Circle to Fin Investments LLC for $27,000 in a mortgage lender approved short sale; a Settlement Statement/HUD-1 was executed and submitted to J.P. Morgan Chase that falsely stated Fin Investments LLC, as the buyer, was bringing $27,000 in cash to purchase 1806 Choyce from J.V.K, as the seller.

x.   Also on or about August 23, 2013, Fin Investments LLC sold 1806 Choyce Circle to J.Z.B. and D.S. for $40,000.

y.   On or about August 26, 2013, ILZHOEFER and GUIDO faxed and caused to be faxed to JP Morgan Chase an Affidavit of "Arm's Length Transaction" stating, among other things, that there were no hidden agreements or special understandings between the parties related to the sale of 1806 Choyce Circle.

Acts related to 3045 Simpson Drive, Charlotte

z.   On or about August 23, 2011, GUIDO submitted a short sale package to mortgage loan servicer Seterus for 3045 Simpson Drive, a property in which GUIDO was a co-owner. The communication contained an Offer to Purchase and Contract between buyer Bel Canto LLC, signed by ILZHOEFER, and seller T.G., and initialed by GUIDO, for a purchase price of $43,500.

aa.  On or about January 27, 2012, ILZHOEFER submitted and caused to be submitted to Seterus false and fraudulent documents in support of a short sale of 3045 Simpson Drive, including a false repair estimate purportedly from Yoder Construction in the amount of $36,850, as well as another Offer to Purchase and Contract with GUIDO's name removed, leaving only T.G. as the seller and Bel Canto LLC as the buyer for a price of $52,000.

bb.  On or about February 12, 2012, GUIDO and ILZHOEFER submitted and caused to be submitted to Seterus an Offer to Purchase and Contract between buyer Bel Canto LLC, signed by ILZHOEFER, and seller T.G. for a purchase price of $66,200 for purchase of 3045 Simpson Drive.

cc. On or about February 22, 2012, M.W., as buyer, and ILZHOEFER, on behalf of Bel Canto LLC as seller, executed an Offer to Purchase and Contract for 3045 Simpson Drive for $106,900.

dd. On or about March 20, 2012, GUIDO and T.G. executed a Quit Claim Deed, granting ownership of 3045 Simpson Drive to CRAF 11 LLC. CRAF 11 is a corporation registered with the North Carolina Secretary of State, established on or about November 1, 2011, organized by GUIDO.

ee. On or about April 2, 2012, T.G., through CRAF 11 LLC, sold 3045 Simpson Drive to Bel Canto LLC for $66,200.

ff. Also on or about April 2, 2012, Bel Canto LLC sold 3045 Simpson Drive to M.W. for $106,900.

Acts related to 2915 Clemson Avenue, Charlotte

gg. On or about December 28, 2009, ILZHOEFER submitted and caused to be submitted to OCWEN, the mortgage loan servicer for property located at 2915 Clemson Avenue that was owned by GUIDO and T.G., a sales agreement between T.G., as seller, and A.S., as buyer, for $36,930.25.

hh. On and or about January 26, 2010, ILZHOEFER submitted and caused to be submitted to OCWEN, the mortgage loan servicer for property located at 2915 Clemson Avenue that was owned by GUIDO and T.G., a sales agreement between T.G. and GUIDO, as seller, and Bel Canto LLC, as buyer, for $28,900.

ii. On or about February 4, 2010, ILZHOEFER sent a counter offer to OCWEN to purchase 2915 Clemson Avenue in short sale that contained a false repair estimate purportedly from RKI construction in the amount of $21,880.

jj. On or about May 12, 2010, GFRE, by W.G., executed an offer to purchase and contract to purchase 2915 Clemson Avenue from seller Bel Canto LLC for $60,000.

kk. On or about June 7, 2010, T.G. sold 2915 Clemson Avenue to A.S. for $35,500.

ll. On or about June 9, 2010, A.S. sold 2915 Clemson Avenue to GFRE for $60,000.

Acts related to 1219 Santell Drive, Charlotte

mm. On or about August 8, 2012, GUIDO communicated with CitiMortgage, the mortgage holder on 1219 Santell Drive, regarding a short sale on the property.

nn. On or about September 13, 2012, GUIDO submitted and caused to be submitted to CitiMortgage false and fraudulent documents to effect a short sale on the property, including (1) a fraudulent Arm's Length Affidavit, executed by H.S. as seller and buyer Eras Holding LLC, (2) a false repair estimate in the name of Handyman Services, in the amount of $34,584.00, and (3) a fraudulent bank statement in the name of Eras Holdings LLC.

oo. On or about January 28, 2013, Eras Holdings LLC purchased 1219 Santell Drive by short sale, using a purported loan from BLT to fund the purchase for $47,000.

pp. On or about March 1, 2013, BLT purchased 1219 Santell Drive from Eras Holdings for $60,000.

All in violation of 18 U.S.C. Section 371.

## COUNTS TWO THROUGH ELEVEN
(False Statements to Financial Institutions – 18 U.S.C. § 1014)

9. The Grand Jury realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 4 of the Bill of Indictment, and further alleges that:

10. On or about the dates listed in the chart below, in the Western District of North Carolina, and elsewhere, the defendants,

(1) AARON GUIDO, and
(2) STARR ILZHOEFER,

knowingly made and caused to be made false statements to the financial institutions, described in the chart below, the deposits of which were insured by the Federal Deposit Insurance Corporation or which qualify as mortgage lending businesses, for the purpose of influencing the action of said financial institutions upon a mortgage loan, or any change of or release from a mortgage loan on a property, described by address in the chart below, in that the statements were false as described in the chart below:

| Count | Date | Financial Institution | Property | False Statements |
|---|---|---|---|---|
| 2 | 2/4/2010 | Ocwen | 2915 Clemson Avenue | - False statements about value of the property, including false repair estimate |
| 3 | 1/27/2012 | Seterus | 3045 Simpson Drive | - False statements about value of the property, including false repair estimate |
| 4 | 8/02/2012 | Wells Fargo | 7116 Indian Ridge Lane | - False statements about value of the property, |

|   |           |              |                    | including false repair estimate |
|---|-----------|--------------|--------------------|---------------------------------|
| 5 | 8/25/2012 | CitiMortgage | 1219 Santell Lane | - False statements about value of the property, including false repair estimate |

| Count | Date | Financial Institution | Property | False Statements |
|---|---|---|---|---|
| 6 | 10/17/2012 | JP Morgan Chase Bank | 3420 Rogers Street | - False statements in Request for Mortgage Assistance about Borrower's Finances<br>- False statements in Request for Mortgage Assistance about Problems with the Property |
| 7 | 12/20/2012 | JP Morgan Chase Bank | 3420 Rogers Street | - False affidavit of "arm's length transaction" |
| 8 | 1/23/2013 | Cenlar | 257 Victoria Ave | - False statements in Uniform Borrower Assistance Form about Borrower's Finances |
| 9 | 2/6/2013 | Cenlar | 257 Victoria Ave | - False statements with Offer to Purchase and Contract, including false bank statement |
| 10 | 9/17/2013 | Cenlar | 257 Victoria Ave | - False statements in Uniform Borrower Assistance Form about Borrower's Finances<br>- False statements in short sale affidavit |
| 11 | 2/19/2014 | Cenlar | 257 Victoria Ave | - False statements in Uniform Borrower Assistance Form about Borrower's Finances |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $1,000,000, such amount constituting the proceeds of the violations set forth in this bill of indictment.

A TRUE BILL:

███████████████
FOREPERSON

R. ANDREW MURRAY
UNITED STATES ATTORNEY

*(signature)*
JENNY GRUS SUGAR
ASSISTANT UNITED STATES ATTORNEY